CASE NO. 13-C-370                                             OPENED  8/29/2013

JUDGE...      JAMES A. MATISH

PLAINTIFF.    SABRINA K. KEEFER-MILLER
VS DEFENDANT. U.S.BANK, N.A. D/B/A U.S.BANK HOME MORTGAGE

PRO ATTY..    COLTON L. FLEU
DEF ATTY..


PAGE#     DATE MEMORANDUM.............

00001   8/29/13 Complaint filed and Summons certified and given back to the
00002   8/29/13 atty for srvc thru SOS w/ a 30 day return.                jmc
00003   9/06/13 Summons & Complaint accepted 9/3/13 by Sec of State for U.S.
00004   9/06/13 Bank, N.A. d/b/a U.S. Bank Home.                          td

IN THE CIRCUIT COURT OF HARRISON COUNTY, WEST VIRGINIA

SABRINA K. KEEFER-MILLER,

    Plaintiff,

v.

U.S. BANK, N.A. d/b/a
U.S. BANK HOME MORTGAGE, and
JOHN DOE HOLDER,

    Defendants.

CIVIL ACTION NO. 13-C-370-3

## COMPLAINT

### INTRODUCTION

1. This case arises out of mortgage loan servicer abuse and seeks to stop the needless foreclosure of Plaintiff's home. In this case, Defendant U.S. Bank Home Mortgage ("U.S. Bank") failed to evaluate Plaintiff for loss mitigation assistance as required by the agreement between the parties, which incorporates the regulations of the United States Department of Housing and Urban Development concerning treatment of borrowers in FHA-insured mortgage loans. These HUD regulations emphasize the lender's responsibility for managing borrower defaults and, in addition to outlining the loss mitigation options available that must be considered for each borrower, provide financial incentives to lenders to recognize their efforts to this end.

Defendant U.S. Bank, improperly and abusively handled Plaintiff's loss mitigation request, including failing to timely communicate with Plaintiff, failing to refer Plaintiff to one-on-one counseling, dual tracking the foreclosure and loss mitigation review, and foreclosing on Plaintiff before a written determination of loss mitigation options. The Plaintiff brings this action to save her home and for other appropriate relief.

## PARTIES

2. <u>Plaintiff</u>, Sabrina K. Keefer-Miller lives with her husband and two children in the subject property.

3. <u>Defendant</u> U.S. Bank, N.A. d/b/a U.S. Bank Home Mortgage, is a corporation doing business in West Virginia with its principal place of business at 425 Walnut Street, Cincinnati, Ohio 45202. Defendant U.S. Bank is the current servicer of the mortgage loan at issue and at all times acted as the agent of Defendant John Doe Holder in servicing the subject loan.

4. <u>Defendant</u> John Doe Holder is the holder of Plaintiffs' mortgage loan and will be added once the identity of the holder is ascertained.

## FACTUAL ALLEGATIONS

5. (a) On or about August 5, 1998, Plaintiff and her then husband purchased the subject home and entered into a mortgage loan that provided for an initial principal balance of $64,500.

(b) The loan was secured by a deed of trust executed simultaneously with the note and recorded with the Morgan County Clerk on August 6, 1998.

(c) In the deed of trust the parties agreed to incorporate the Regulations of the HUD Secretary, and further agreed that acceleration or foreclosure is not authorized unless in accordance with said regulations. (<u>See</u> Deed of Trust ¶ 9.)

6. Thereafter, Plaintiff and her ex-husband began making timely and complete payments.

7. (a) Plaintiff and her ex-husband divorced in June 2004.

(b) Per the divorce decree, Plaintiff's ex-husband was responsible for payments on the mortgage loan, and he was to continue to reside there.

8. (a) In or around December 2007, Plaintiff's ex-husband was in default on the

loan.

    (b)    Plaintiff and her ex-husband that Plaintiff would pay to bring the loan current and Plaintiff's ex-husband would deed the property to Plaintiff and her current husband.

    (c)    The quit claim deed was recorded with the Morgan County Clerk on February 14, 2008.

9.    Thereafter, Plaintiff began making the monthly mortgage payments on the loan.

10.    Plaintiff continued to make her regular monthly payments until late 2009 when she suffered the loss of her job.

11.    (a)    By early 2010, Plaintiff was having difficulty making her payments.

    (b)    At this time, she contacted Defendant and asked about loan modification options.

    (c)    Defendant asked her questions about her financial state and told her she would qualify for assistance based on the information provided. Defendant told her it would send her an application to complete and return.

12.    Plaintiff timely completed the application and submitted it to Defendant.

13.    (a)    When Plaintiff did not hear from Defendant for several weeks, so she called to ask about the status of her modification.

    (b)    Defendant told her that it had sent the wrong application and she would need to fill out a different packet and resubmit.

    (c)    Plaintiff timely submitted this packet as well.

14.    (a)    After about three weeks, in early summer 2010, Plaintiff still had not heard anything from Defendant, so she again called to check on the status of her application.

    (b)    Defendant told Plaintiff more documents were needed and that her ex-

husband would have to sign some documents, as well.

        (c)    Defendant U.S. Bank instructed Plaintiff not to make any monthly payments because, as Defendant explained, Plaintiff's continued payments would show she did not have a need for a loan modification.

15.    Plaintiff went back and forth with Defendant for months continually updating her application and providing documents that Defendant claimed it did not receive.

16.    (a)    In November 2011, Plaintiff again called Defendant to try to understand the reason for the delay.

        (b)    When she spoke to the Defendant's agent, the agent told her that she no longer owned her house, and that it had been foreclosed on.

        (c)    Plaintiff was shocked; she had never received any notice of foreclosure.

        (d)    In December 2011, Plaintiff received a notice to vacate the property.

17.    In response to the notice to vacate, Plaintiff contacted the foreclosure attorney.

18.    The foreclosure attorney, Samuel I. White, P.C. worked with Plaintiff to rescind the foreclosure, because upon information and belief, because of both the lack of notice and dual tracking of the loan modification process and foreclosure.

19.    Samuel I. White, P.C. had the foreclosure rescinded and Plaintiff was able to borrower money from friends and family to bring the loan current.

20.    In April 2012, Plaintiff was current.

21.    Plaintiff was still struggling to make the regular monthly payment and had never received the promised response to her loan modification application.

22.    (a)    In July 2012, Plaintiff again contacted Defendant about options to keep her home and reduce her payment.

(b) Defendant told Plaintiff she would have to start the process again, and that she would receive the loan modification application in seven to ten business days.

(c) Plaintiff did not receive the loan modification as promised and called several times regarding the status of the promised package.

(d) Plaintiff did not receive the application until December 2012.

23. In January 2013, Plaintiff sent the completed application to Defendant.

24. (a) In April 2013, Defendant contacted Plaintiff and told her the application was missing a few required documents.

(b) Plaintiff timely resubmitted those documents.

25. (a) Plaintiff has never received a written determination on this loan modification application.

(b) However, Defendant again scheduled her home for sale on July 16, 2013.

26. Plaintiff files this action to stop the illegal foreclosure and to assert her contractual and legal rights.

27. Plaintiffs suffered economic loss, stress and worry, annoyance and inconvenience, and fear of loss of home.

## COUNT I - BREACH OF CONTRACT

28. Plaintiff incorporates all of the preceding paragraphs by reference.

29. The Deed of Trust agreement provides that Plaintiff has a contractual right to reinstate the loan. (Deed of Trust ¶ 19.)

30. The Deed of Trust provides Defendant the discretion to modify the contract or engage in other types of payment plans. (Deed of Trust ¶ 12.)

31. (a) The Deed of Trust agreement between the parties "does not authorize

acceleration or foreclosure if not permitted by regulations of the Secretary." (Deed of Trust ¶ 9(d).)

    (b)    The regulations incorporated in the parties' agreement are found in 24 CFR § 203 et seq.

    (c)    These applicable regulations incorporated into the Deed of Trust, require U.S. Bank to consider Plaintiff for a host of loss mitigation alternatives prior to pursuing foreclosure and to follow procedures for servicing the subject mortgage loan.

32.    Defendant has breached its duties under the contract by its actions and inactions, including but not limited to:

    (a)    Failing to evaluate Plaintiffs for all loss mitigation techniques before four full monthly installments came due (24 CFR § 203.605);

    (b)    Failing to properly counsel Plaintiffs (24 CFR § 203.602);

    (c)    Failing to provide information regarding the loan of the process of review under FHA guidelines to Plaintiffs (24 CFR § 203.508);

    (d)    Failing to conduct or arrange a face-to-face interview with Plaintiffs within three months of default (24 CFR § 203.604);

    (e)    Initiating foreclosure proceedings before all loss mitigation options have been considered (24 CFR § 203.606); and

    (f)    Failing to inform Plaintiffs in writing why Defendant could not provide assistance (Mortgagee Letter 2000-05 at 11, ¶ H).

33.    Defendant has an implied contractual duty to act in good faith in the performance of the contract such that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the benefit of their contract.

34.    Defendant U.S. Bank breached its contractual duties of good faith and express

contractual provisions by:

    (a)    needlessly prolonging Plaintiff's loss mitigation review, thereby allowing Plaintiff's indebtedness to increase to an extent that it required great hardship and financial burden for Plaintiff to reinstate;

    (b)    failing to provide Plaintiff with information regarding all of the loss mitigation options available to her to avoid loss of home;

    (c)    failing to provide written results of or decisions regarding review and consideration of Plaintiff's requests for assistance;

    (d)    failing to consider specific options to minimize loss, including a special forbearance, loan modification, partial claim, recasting of the mortgage, and other options; and

    (e)    instructing Plaintiff not to make payments while under review for loss mitigation assistance.

35.    Defendant's breach of express contractual provisions and its contractual duties was intentional, wanton, and/or reckless.

36.    Plaintiff was damaged as a proximate result of Defendant's breach of its contractual duties.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

    (a)    Actual and compensatory damages;

    (b)    Specific performance, including strict complaince with all loss mitigation requirements.

    (c)    Equitable relief including the provision of an affordable loan modification; and

    (d)    Such other relief as the Court deems equitable and just.

## COUNT II - NEGLIGENCE

37. Plaintiff incorporates the preceding paragraphs by reference.

38. Under the circumstances alleged, in which Defendant engaged in significant communications and activities with Plaintiff and the loan thereby creating a special relationship with Plaintiff, Defendant owed a duty to Plaintiff to provide her with accurate information about her loan account and its obligations and rights thereunder.

39. Defendants breached that duty by instructing Plaintiff not to make payments, advising Plaintiff that she would receive a loan modification, and then instead allowing arrears to accrue for months and pursuing foreclosure.

40. Plaintiff was damaged by Defendants' misconduct by the accrued arrears that now make it impossible for Plaintiff to reinstate her loan.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

    (a) Appropriate equitable relief;

    (b) Actual damages;

    (c) Reasonable attorney's fees and the cost of this litigation; and

    (d) Such other relief the Court deems equitable and just.

## COUNT III- MISREPRESENTATIONS IN DEBT COLLECTION

41. Plaintiff incorporates all of the preceding paragraphs by reference.

42. By instructing Plaintiff to provide documents and information for loss mitigation, by representing that a decision would be forthcoming, and failing to ever respond with a written loss mitigation decsision, Defendant made numerous representations in the course of servicing Plaintiff's mortgage loan in violation of section 46A-2-127 of the West Virginia Code.

43. By representing that Plaintiffs failed to submit requested documents and by using that

representation as the basis for denial of a repayment plan when, Defendant made numerous representations in the course of servicing Plaintiffs' mortgage loan in violation of section 46A-2-127 of the West Virginia Code.

**WHEREFORE**, Plaintiffs respectfully request the following relief:

(a) Actual damages;

(b) Civil penalties of $4,725 for <u>each</u> violation pursuant to sections 46A-5-101(1) & -106 of the West Virginia Code;

(c) Attorney's fees and costs pursuant to section 46A-5-104 of the West Virginia Code;

(d) Such other relief as this Court deems equitable and just.

## COUNT IV - UNCONSCIONABLE DEBT COLLECTION

44. Plaintiff incorporates all of the preceding paragraphs by reference.

45. Defendant used unconscionable and unfair means to collect a debt in violation of section 46A-2-129 of the West Virginia Code as follows:

(a) While purportedly reviewing Plaintiff for loss mitigation assistance and without providing Plaintiff any written or verbal determination on said review, Defendant foreclosed on Plaintiff's home in an attempt to collect a debt; and

(b) After wrongfully foreclosing on Plaintiff's home and rescinding the foreclosure sale, Defendant continued to schedule foreclosure sales in additional attempts to collect on a debt while delaying a decision on loss mitigation.

**WHEREFORE**, Plaintiffs respectfully request the following relief:

(a) Actual damages;

(b) Civil penalties of $4,725 for <u>each</u> violation pursuant to sections 46A-5-

101(1) & -106 of the West Virginia Code;

  (c) Attorney's fees and costs pursuant to section 46A-5-104 of the West Virginia Code;

  (d) Such other relief as this Court deems equitable and just.

### COUNT IV - ESTOPPEL (Servicer/Holder)

46. Plaintiff incorporates the preceding paragraphs by reference.

47. Defendant falsely represented to Plaintiff that she would qualify for a loan modification, that the loan modification would go through, that their paperwork was in order, and that she had nothing to worry about.

48. Defendant concealed that it would not in fact provide a loan modification or other loss mitigation option to Plaintiffs.

49. Defendant knew or should have known that it would not provide Plaintiff with a loan modification or other option.

50. Plaintiff did not know that she would not receive a modification or other loss mitigation option.

51. Defendant's concealment and false representations were intentional.

52. Plaintiff relied on said representations in choosing not to exercise other remedies to cure their default or save the equity in her home.

53. Plaintiff was justified in relying on Defendant's representations.

54. Plaintiff was damaged by their reliance on Defendant's representations.

**WHEREFORE**, Plaintiffs respectfully request the following relief:

  (a) Appropriate equitable relief including provision of an affordable loan modification;

(b) Actual damages; and

(c) Such other relief as the Court deems equitable and just.

PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE

SABRINA K. KEEFER-MILLER
By Counsel.

Sara Bird (WV Bar No. 10269)
Colten L. Fleu (WV Bar No. 12079)
Mountain State Justice, Inc.
321 W. Main St., Ste. 620
Clarksburg, WV 26301
(304) 326-0188
(304) 326-0189 (fax)

FILED IN 15TH
CIRCUIT COURT
2013 AUG 29 PM 2:48